# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ------------------------------------------------- x | | |
| IN RE:  ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (NO. VI) | : | CIVIL ACTION NO. MDL 875 |
| ------------------------------------------------- x | : | |
| This Document Relates To: | : | |
| ------------------------------------------------- x | : | |
| JEFFREY L. CENTERS, Special | : | Transferee E.D. Pa. |
| Administrator for the Estate of ALBERT | : |    Case No. 08-cv-90268 |
| CENTERS, Deceased, | : | |
| | : | |
|     Plaintiff, | : | Transferor N.D. Ill. |
| | : |    Case No. 02-cv-8702 |
|     v. | : | |
| | : | |
| A.W. CHESTERTON COMPANY *et al.*, | : | Oral Argument Requested |
| | : |    Under Local Rule 7.1(f) |
|     Defendants. | : | |
| ------------------------------------------------- x | | |

# OWENS-ILLINOIS, INC.'S
# SECOND MOTION FOR SUMMARY JUDGMENT

Robert H. Riley
Edward Casmere
Brian O. Watson
Schiff Hardin LLP
233 S. Wacker Dr. Suite 6600
Chicago, Illinois  60606
(312) 258-5500
(312) 258-5600 (facsimile)
*Attorneys for Defendant*
*Owens-Illinois, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................... 1

    A.   Kenneth Downs ............................................................................. 2

    B.   Howard Kiser ................................................................................ 6

III.    LEGAL STANDARD ............................................................................. 8

    A.   The Summary Judgment Standard.................................................. 8

    B.   The Applicable Law of Illinois ...................................................... 9

IV.     ARGUMENT ...................................................................................... 10

    A.   Owens-Illinois Is Entitled to Summary Judgment Because
         Plaintiff Has No Causation Evidence Against Owens-Illinois............... 10

        1.   Illinois Demands Sufficient Proof of Cause-in-Fact in
            Asbestos Cases. ................................................................ 11

            a.   The Substantial Factor Test Is Frequency, Regularity,
                and Proximity............................................................ 12

            b.   The Frequency, Regularity, and Proximity Test Is Not
                Mere Jobsite Product Identification............................. 13

            c.   The Frequency, Regularity, and Proximity Test Does
                Not Change Based on "Direct" Versus "Circumstantial"
                Evidence. ................................................................. 15

            d.   The Frequency, Regularity, and Proximity Test Does
                 Not Mean "Any and All" or "Each and Every."...................... 16

        2.   Plaintiff Did Not Disclose Any Evidence or Witness
            During Discovery Against Owens-Illinois. .............................. 18

        3.   Owens-Illinois Cannot Be Held Liable for Alleged
            Kaylo Exposure After April 30, 1958. .................................... 19

        4.   Plaintiff's Response to the Court-Ordered Requests
            Does Not Identify Exposure Evidence Against Owens-
            Illinois................................................................................ 21

    B.   Owens-Illinois Is Entitled to Summary Judgment Because No
         Expert Has a Specific Causation Opinion as to Owens-Illinois............. 22

V.      CONCLUSION ................................................................................... 24

## I.      INTRODUCTION

Albert Centers smoked 1½ packs of cigarettes a day for 40 years, continued to smoke despite his lung cancer diagnosis, and as his death certificate states, died of "tobacco abuse" in 2002.[1]  Mr. Centers' son, Jeffrey Centers ("Plaintiff"), claims that the lung cancer was caused not by smoking, but as a result of exposure to asbestos-containing products in Illinois.[2]   Plaintiff filed suit in the Northern District of Illinois, alleging state law-based negligence claims against twelve defendants, including Owens-Illinois, Inc. ("Owens-Illinois").[3]

As set forth below, Owens-Illinois is entitled to summary judgment because there is no genuine dispute of material fact on two issues of Illinois law.  First, there is no evidence that Mr. Centers was ever exposed to any asbestos-containing product manufactured or sold by Owens-Illinois — much less the required evidence of so frequent, regular, and proximate exposure that it was a substantial factor in causing his lung cancer.  Second, no expert has offered an opinion that exposure to asbestos from any product manufactured or sold by Owens-Illinois was a substantial factor in causing his lung cancer.  For these reasons, Owens-Illinois requests summary judgment.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts about Owens-Illinois are undisputed.  Owens-Illinois is, and always has been, a glass company.  Owens-Illinois is named as a defendant

---

[1] Sarah Bush Lincoln Health (Ex. A) at 1-2; Death Certificate (Ex. B) at 1.

[2] Compl. (Ex. C) ¶¶ 6-10.

[3] *Id.* at ¶¶ 11-15, 41.

because, for a limited period of time ending on April 30, 1958, it made and sold a high temperature thermal insulation product called Kaylo. On April 30, 1958, Owens-Illinois sold the entire Kaylo business to Owens Corning Fiberglas, a separate company that continued to make and sell insulation under the brand name Kaylo into the 1970s. Owens-Illinois did not make or sell Kaylo after April 30, 1958.

Fact discovery closed in this case on May 21, 2012. Order at ¶ 2, ECF No. 102. Plaintiff never provided any initial disclosures under Rule 26(a)(1), nor did he serve any complete, properly verified answers to the court-ordered standard interrogatories. Plaintiff also failed to serve complete, properly verified responses to Owens-Illinois's product-specific discovery. Thus, Plaintiff had at least three separate opportunities and obligations to identify his evidence against Owens-Illinois, and he failed to do so.

Significantly, Plaintiff's late discovery responses were stricken and his witnesses should be precluded from testifying as undisclosed during fact discovery. Order at ¶ 10, ECF No. 144 (granting Owens-Illinois's motion to strike and preclude). In the court-ordered requests, however, Plaintiff responded with new evidence that was never disclosed during discovery. *See* Pl.'s Resp. (Ex. D) at 1. Plaintiff responded that Mr. Centers was exposed to Owens-Illinois Kaylo pipe covering at USI Chemical in Tuscola, Illinois between 1974 and 1975. *Id.* But there is no admissible evidence to support his response.

## A.    Kenneth Downs

Plaintiff's first fact witness, Kenneth Downs, cannot support his response to the court-ordered requests. Pl.'s Resp. (Ex. D) at 1. Mr. Downs was precluded from

testifying in this case as undisclosed during fact discovery.  *See* Order at ¶ 10, ECF No. 144 (granting Owens-Illinois's motion to strike and preclude).   After the renewed scheduling order, Plaintiff then noticed the deposition of Mr. Downs. Kenneth Downs Dep. (Ex. E) at 1.  Mr. Downs testified that he worked with Mr. Centers at USI Chemical in 1974 or 1975.  *Id.* at 20:15-23.  Mr. Downs could not identify any insulation being removed or installed at USI Chemical:

> Q.   Is there any way for you to testify about the brand name, trade name or manufacturer name of the new insulation being installed at USI?
>
> A.   No.
>
> * * *
>
> Q.   Is there any way for you to testify about the manufacturer of the insulation being removed from the pipes at USI?
>
> A.   No.

*Id.* at 29:2-21.

Mr. Downs also explained that every preformed pipe covering, including Owens-Illinois Kaylo, looked the same when removed from their packaging:

> Q.   Was there a way for you to tell whether any of the insulation you removed from pipes was made by AC&S?
>
> A.   Not when it was being taken off the pipes. There was no markings on it or anything.  I mean, it was old; it had been used, you know.
>
> Q.   Is there any way for you to testify that the old insulation being removed was made by Armstrong?
>
> A.   No.
>
> Q.   Is there any way for you to testify that the old insulation being removed was made by Thermasil?
>
> A.   No.
>
> Q.   Is there any way for you to testify that the old insulation being removed was made by Thermalite?
>
> A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Baldwin-Ehret-Hill or BEH?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Keene?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Mundet?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Crown Cork & Seal?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Fibreboard?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Caltemp?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by PABCO?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Forty-Eight Insulation?

A.   No.

Q.   Is there any way for you to testify that the old insulation was made by GAF?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Johns Manville?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Thermobestos?

A.   No.

Q.   Is there any way for you to testify that the old insulation being removed was made by Philip Carey?

- 4 -

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was Caretytemp?

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was made by Pittsburgh Corning?

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was made by UNARCO?

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was made by Unibestos?

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was made by Owens-Corning?

A.    No.

Q.    Is there any way for you to testify that the old insulation being removed was made byOwens-Illinois?

A.    No.

* * *

Q.    The short way to go through all those questions is after any of those insulation products or cement products were removed from their packaging, is there any way to tell the difference?

A.    Not by me, no.

* * *

Q.    It states in your declaration that, "The insulation I saw being removed at USI was mostly a preformed, half-round section that looked hard, chalky and off-white." Do you see that?

A.    Uh-huh.

Q.    Is that essentially a description of the insulation products that you saw on all of your job sites that were the same type of hard, chalky and off-white?

A.    I think so.

*Id.* at 34:24-43:3, 70:24-71:9. Mr. Downs therefore could not identify Owens-Illinois

Kaylo pipe covering at USI Chemical, much less offer any testimony that Mr.

Centers was exposed to Owens-Illinois Kaylo pipe covering at USI Chemical between 1974 and 1975.

### B.    Howard Kiser

Plaintiff's second fact witness, Howard Kiser, also cannot support his response to the court-ordered requests. Pl.'s Resp. (Ex. D) at 1. Like Mr. Downs, Mr. Kiser was barred from testifying in this case as undisclosed during fact discovery. *See* Order at ¶ 10, ECF No. 144 (granting Owens-Illinois's motion to strike and preclude).

Plaintiff then noticed the deposition of Mr. Kiser after the renewed scheduling order. Howard Kiser Dep. (Ex. F) at 1. Mr. Kiser testified that he did not know Mr. Centers and could not testify about his alleged exposure:

> Q.    Is there any way for you to testify about what Albert Centers did?
> A.    No, no.
>
> * * *
>
> Q.    Was there any way for you to testify about the types of products that Albert Centers --
> A.    No.
> Q.    worked around at USI?
> A.    No.
> Q.    Is there any way for you to testify that Albert Centers even worked at USI?
> A.    No.  It's – no.

*Id.* at 34:8-23.

Additionally, Mr. Kiser testified that USI Chemical performed massive turnarounds every year. *Id.* at 28:2-14, 41:17-20. The old pipe covering was removed and new pipe covering was installed year after year at USI Chemical. *Id.* at 27:20-28:14. Mr. Kiser could not, therefore, identify who made the pipe covering.

- 6 -

*Id.* at 27:13-20.  Like Mr. Downs, Mr. Kiser also testified that every preformed pipe

covering, including Owens-Illinois Kaylo, looked the same when removed from their

packaging:

> Q.   When you had insulation products that you
>       encountered at USI and you were removing them,
>       was there any way to tell whether that covering or
>       block was made by AC&S?
>
> A.   No.
>
> Q.   Was there any way for you to tell whether that was
>       made by Baldwin-Ehret-Hill?
>
> A.   No, we never looked for any identification.  We just
>       tore it off.
>
> Q.   Was there any way for you to tell whether the
>       insulation you were tearing off was made by Crown
>       Cork & Seal?
>
> A.   No.
>
> Q.   Was there any way for you to tell whether the old
>       insulation you were removing off was made by
>       Fibreboard?
>
> A.   No.
>
> Q.   Was there any way for you to tell that the old
>       insulation you were taking off was made by Forty-
>       Eight Insulations?
>
> A.   No.
>
> Q.   Was there any way for you to tell whether the old
>       insulation you were taking off was made by GAF?
>
> A.   No.
>
> Q.   Was there any way for you to take – to tell that the
>       old insulation you were taking off was made by
>       Johns Manville?
>
> A.   No.
>
> Q.   Was there any way for you to tell that the old
>       insulation you were taking off was made by Philip
>       Carey?
>
> A.   No.
>
> Q.   Was there any way for you to tell that the old
>       insulation you were taking off was made by Owens-
>       Corning?
>
> A.   No.

> Q.    Was there any way for you to tell that the old insulation you were taking off was made by Owens-Illinois?
>
> A.    No.
>
> Q.    All those insulation products look the same once they are installed?
>
> A.    They all look the same and there's no identification marks on them.

*Id.* at 29:15-32:1.  Accordingly, Mr. Kiser could not identify Owens-Illinois Kaylo pipe covering at USI Chemical, much less offer any testimony that Mr. Centers was exposed to Owens-Illinois Kaylo pipe covering at USI Chemical.

Indeed, Mr. Centers worked at USI Chemical in the 1970s, *see* Downs Dep (Ex. E) at 20:15-23, two decades after Owens-Illinois had ceased the manufacture and sale of Kaylo insulation in April 1958.  Although Plaintiff admits in his bankruptcy claims that Mr. Centers was exposed at USI Chemical to pipe covering made by dozens of bankrupt companies, including Owens-Corning Kaylo in 1974 and 1975 (*see* Pl.'s Resp. Bankr. Trust Discovery (Ex. G) at 6, 14), there is no admissible evidence anywhere in the record that Mr. Centers was ever exposed to Owens-Illinois Kaylo.  Plaintiff's claim that Mr. Centers was exposed to Owens-Illinois Kaylo is pure speculation under Illinois law, and he has failed to present any exposure evidence with sufficient frequency, regularity, and proximity to create a genuine issue of material fact.

## III.    LEGAL STANDARD

### A.    The Summary Judgment Standard

Summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Summary judgment will be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Although the moving party bears the initial burden to show the absence of any genuine disputes of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "Summary judgment must be granted where no genuine issue of material fact exists for resolution at trial and the moving party is entitled to judgment as a matter of law." *Orson Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  "When the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has not offered evidence sufficient to establish the existence of an element essential to its case." *Id.*

## B.    The Applicable Law of Illinois

Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332, and this action was initially filed in the Eastern District of Illinois.

Compl. (Ex. C) at ¶¶ 1-6.   To decide what substantive law governs, a federal transferee court in diversity jurisdiction applies the choice-of-law rules of the state in which the action was filed.  *See Van Dusen v. Barrack*, 376 U.S. 612, 637-40 (1964) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945)).   Plaintiff has alleged exposure to asbestos-containing products only in Illinois, so Illinois substantive law governs his claims against Owens-Illinois.  As such, this Court should apply Illinois substantive law.

## IV.   ARGUMENT

### A.   Owens-Illinois Is Entitled to Summary Judgment Because Plaintiff Has No Causation Evidence Against Owens-Illinois.

This year, the Illinois Appellate Court re-confirmed that "[t]o survive a motion for summary judgment on the issue of exposure to a defendant's asbestos product, the plaintiff must satisfy the 'frequency, regularity, and proximity' test.'" *Bowles v. Owens-Illinois, Inc.*, 2013 IL App (4th) 121072, at ¶ 21 (quoting *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 603 N.E.2d 449 (Ill. 1992)).  The frequency, regularity, and proximity test under Illinois law "requires that a plaintiff 'show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product.'"  *Id.*

Owens-Illinois is aware of this Court's prior rulings construing Illinois law, *e.g.*, *Goeken v. ACandS, Inc.*, No. 10-68122 (E.D. Pa. Apr. 3, 2012), and requests this Court revisit its interpretation of Illinois's causation standard in light of *Bowles*,

2013 IL App (4th) 121072, at ¶ 21.  In every asbestos case to survive summary judgment on the issue of causation, the plaintiff must satisfy the frequency, regularity, and proximity test under Illinois law.

1.    **Illinois Demands Sufficient Proof of Cause-in-Fact in Asbestos Cases.**

In Illinois proximate cause describes two distinct requirements:  1) cause-in-fact, and 2) legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm. *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 431 (Ill. 2009); *Thacker*, 151 Ill. 2d at 354. Plaintiffs can satisfy their cause-in-fact burden under either the "but for" test or the "substantial factor" test.  *Nolan*, 233 Ill. 2d at 431; *Thacker*, 151 Ill. 2d at 354-55. The "but for" test asks, Would the injury have occurred absent the defendant's conduct? *Nolan*, 233 Ill. 2d at 431 (quoting *Thacker*, 151 Ill. 2d at 354-55).  Where there are multiple possible causes, as in this asbestos case, the "substantial factor" test asks, Was the defendant's conduct a substantial factor in causing the injury? *Nolan*, 233 Ill. 2d at 354-55 (quoting *Thacker*, 51 Ill. 2d at 354-55).

Under either test, "Illinois courts have, as a matter of law, refused to allow a plaintiff to take the causation question to the jury when there is insufficient evidence for the jury to reasonably find that the defendant's conduct was a cause of the plaintiff's harm or injury."  *Nolan*, 233 Ill. 2d at 431 (quoting *Thacker*, 151 Ill. 2d at 355).  It is "the axiomatic rule that a plaintiff alleging personal injury in any tort action—*including asbestos cases*—must adduce sufficient proof that the defendant caused the injury. . . . [P]roof which relies on conjecture, speculation, or

guesswork is insufficient." *Nolan*, 233 Ill. 2d at 430.  Illinois courts have refused to

"carve out an exception for asbestos cases which relieved those plaintiffs from

meeting the same burden as all other tort plaintiffs." *Id.* at 434.

> **a.**  **The Substantial Factor Test Is Frequency,**
> **Regularity, and Proximity.**

Two decades ago, the Illinois Supreme Court adopted frequency, regularity,

and proximity as ***the*** substantial factor test in order to show cause-in-fact in

asbestos cases:

> plaintiff [must] show that the injured worker was exposed to the
> defendant's asbestos through proof that (1) he regularly worked
> in an area where the defendant's asbestos was frequently used
> and (2) the injured worker did, in fact, work sufficiently close to
> this area so as to come into contact with the defendant's product.
> . . . The defendant has referred to this approach as the
> "frequency, regularity and proximity" test, and we adopt this
> test as the rule of law in Illinois.

*Thacker*, 151 Ill. 2d at 359 (citation omitted).

Since *Thacker*, the Illinois Supreme Court has made clear in two more

decisions that asbestos plaintiffs must have evidence of frequent, regular, and

proximate exposure to a defendant's product to create a triable issue on substantial

factor.  "[W]e adopted *Lohrmann*'s frequency, regularity and proximity test—

tailored to application in asbestos actions—as a means by which a plaintiff choosing

to prove cause in fact through use of the substantial factor test may meet that

burden." *Nolan*, 233 Ill. 2d at 434; *accord Donaldson v. Cent. Ill. Pub. Serv. Co.*, 199

Ill. 2d 63, 91 (Ill. 2002) ("[T]o show causation in an asbestos case, a plaintiff must

'produce evidence of exposure to a specific product on a regular basis over some

extended period of time in proximity to where the plaintiff actually worked,'

commonly called the 'frequency, regularity and proximity' test" (quoting *Thacker*, 151 Ill. 2d at 363)).

As a matter of law, the Illinois Appellate Court has held repeatedly that asbestos plaintiffs must therefore satisfy the frequency, regularity and proximity test at summary judgment.  *E.g.*, *Bowles*, 2013 IL App (4th) 121072, at ¶ 21; *Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill. App. 3d 669, 677 (Ill. App. Ct. 3d Dist. 1996).  Federal courts in Illinois have reached the same conclusion, holding that only evidence of frequency, regularity, and proximity will defeat summary judgment.  *Flood v. Owens-Illinois*, No. 86 C 8947, 2003 WL 22462314, at *1 (N.D. Ill. Apr. 4, 2003).

### b. The Frequency, Regularity, and Proximity Test Is Not Mere Jobsite Product Identification.

Illinois's substantial factor test of frequency, regularity and proximity is not merely putting a defendant's product at the jobsite.  *E.g.*, *Bowles*, 2013 IL App (4th) 121072, at ¶ 21; *Johnson*, 284 Ill. App. 3d at 677.  That is, "merely identifying a defendant's product at a jobsite where a plaintiff worked is insufficient to establish asbestos exposure."  *In re All Asbestos Litig.*, 385 Ill. App. 3d 386, 391 (Ill. App. Ct. 1st Dist. 2008); *Thacker*, 151 Ill. 2d at 358 (rejecting "invitation to fashion a rule by which a jury question would be created whenever there is any evidence that a defendant's asbestos-containing product was used at a workplace at the same time the plaintiff worked there"); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986) (holding "the mere proof that the plaintiff and a certain

asbestos product are at the shipyard at the same time, without more, does not prove

exposure to that product").

The Illinois Appellate Court, the Seventh Circuit, and the Federal District

Courts in Illinois have each held that jobsite product identification is insufficient as

a matter of law:

- affirming summary judgment—despite military records and testimony identifying products on ship—because the mere presence on the ship "could not meet the requirements of the 'frequency, regularity and proximity' test," *Bowles*, 2013 IL App (4th) 121072, at ¶ 31.

- affirming summary judgment—despite sales records and testimony identifying products at jobsite—because the presence of product "cannot establish even a minimum level of contact and thus cannot meet the *Thacker* standard," *Johnson*, 284 Ill. App. 3d at 675.

- affirming summary judgment—despite four coworkers identifying products at jobsite—because "there was no evidence that plaintiff worked on these ships at the exact same time as the other four men or in close proximity to them as the defendants' products were being used," *Zimmer v. Celotex Corp.*, 192 Ill. App. 3d 1088, 1091 (Ill. App. Ct. 1st Dist. 1989).

- affirming summary judgment—despite plaintiff identifying products at jobsite—because "the mere presence of [defendant's] products at the job site is insufficient to create an issue of material fact," *Shine v. Owens-Illinois, Inc.*, 979 F.2d 93, 97-98 (7th Cir. 1992).

- entering summary judgment—despite worker identifying product at jobsite—because "[t]he fact that [plaintiff] and a particular asbestos product were both at the same job site, without more, does not demonstrate that he was exposed to that product," *Tragarz v. Keene Corp.*, 734 F. Supp. 834, 836 (N.D. Ill. 1990).

In other words, evidence that a defendant's product was merely used at a jobsite

when plaintiff worked there does not satisfy the substantial factor test of frequency,

- 14 -

regularity, and proximity under Illinois law.

>            c.   **The Frequency, Regularity, and Proximity Test**
>                 **Does Not Change Based on "Direct" Versus**
>                 **"Circumstantial" Evidence.**

Illinois's substantial factor test of frequency, regularity, and proximity is neither a moving target nor a sliding scale. The standard does not change, as CVLO has suggested, based on whether a witness (a plaintiff or a co-worker) provides the purported exposure evidence. Every Illinois asbestos case has required frequency, regularity, and proximity as a matter of law to satisfy the substantial factor test since *Thacker* — irrespective of whether a witness provided exposure evidence "directly." Illinois courts have, moreover, rejected CVLO's direct-versus-circumstantial-evidence argument. "Contrary to plaintiff's assertion, it applies to cases based on direct evidence, circumstantial evidence, or both." *Coyne v. Archer-Daniels-Midland Co.*, No. 08 L 375, slip op. at 4 (Ill. Cir. Ct. Dec. 8, 2010) (circuit court order rejecting CVLO assertion, and granting summary judgment against its client attached as Ex H).

By adopting frequency, regularity, and proximity, the *Thacker* Court recognized that "[d]ue to the unique problems posed by asbestos injury, plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation." *Thacker*, 151 Ill. 2d at 357. "Direct" evidence to show cause-in-fact in asbestos cases would be impossible:

> due to the microscopic size of asbestos fibers, asbestos cannot
> always be seen drifting in the air or entering a plaintiff's body.
> The small size of these fibers also means that asbestos fibers
> from different sources are generally indistinguishable from one
> another, even when removed from a plaintiff's body and

> examined through a microscope. . . . [T]he time between when
> asbestos fibers are first inhaled and when scarring in the lungs
> becomes symptomatic is commonly between 25 and 30 years.
> This means that a plaintiff injured by asbestos fibers often does
> not know exactly when or where he was injured and therefore is
> unable to describe the details of how such injury occurred.

*Id.*  Surely Plaintiff does not contend that she has "direct" evidence of those particular microscopic asbestos fibers (and their exact source) inhaled into Mr. O'Keefe's lung and which caused the specific genetic mutation to develop a lung cancer.  Nor has Plaintiff disclosed any such "direct" evidence.

In order to solve these very "unique problems posed by asbestos injury" and "to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)," the Illinois Supreme Court adopted frequency, regularity, and proximity as the substantial factor test in every Illinois asbestos case.  *Id.* at 359.  Despite CVLO's repeated assertions to this Court, the frequency, regularity and proximity test is the only substantial factor test in every Illinois asbestos case — without any exception for their clients in MDL 875.

### d. The Frequency, Regularity, and Proximity Test Does Not Mean "Any and All" or "Each and Every."

Illinois's substantial factor test of frequency, regularity and proximity also "rejected the argument . . . that so long as there is *any* evidence that the injured worker was exposed to a defendant's asbestos-containing product, there is sufficient evidence of cause in fact to allow the issue of legal causation to go to the jury." *Nolan,* 233 Ill. 2d at 434 (emphasis original).  As the Illinois Supreme Court held, "such an approach is contrary to the concept of substantial causation." *Id.* at 434.

In other words, "substantial" does not mean "any and all" or "each and every." Sporadic, intermittent exposure is not "frequent" or "regular." Far to the contrary, asbestos plaintiffs must "prove more than minimum contact to establish that a specific defendant's product was a substantial factor in being a cause in fact of a plaintiff's injury." *Id.* at 432. For "without the minimum of proof required to establish frequency, regularity and proximity of exposure, a reasonable inference of substantial causation in fact cannot be made." *Id.* at 434.

In adopting the frequency, regularity, and proximity test, "*Thacker* establishes that it is possible to exclude particular exposures as substantial contributing causes of a plaintiff's injury in asbestos cases." *Id.* at 439 (citing *Thacker*, 151 Ill. 2d at 355). *Thacker* defines the legal meaning of substantial factor, and neither CVLO nor its experts are at liberty to ignore that legal definition. Any each-and-every-exposure-is-a-substantial factor opinion violates Illinois law by flipping the burden of proof away from plaintiffs and onto defendants — a stratagem rejected specifically by the Illinois Supreme Court. "We reiterate, however, that the ultimate *burden of proof on the element of causation* remains exclusively on the plaintiff, and that burden is never shifted to the defendant." *Nolan*, 233 Ill. 2d at 435 (emphasis original).

Illinois substantive law, therefore, demands proof that a plaintiff was so frequently, regularly, and proximately exposed to a defendant's specific product to create a genuine issue for the jury on cause-in-fact. Nothing less will suffice. The

every-exposure-is-a-substantial-factor opinion, and the causation standard advocated by CVLO, is contrary to the substantive law of Illinois.

### 2. Plaintiff Did Not Disclose Any Evidence or Witness During Discovery Against Owens-Illinois.

During fact discovery, Plaintiff did not disclose any evidence or identify any witness to show that Mr. Centers was exposed to an asbestos-containing product made or sold by Owens-Illinois. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37's requirements are therefore mandatory — an unequivocal "not."

As the Third Circuit held, a party must disclose the names and alleged knowledge of any witness, and the "[f]ailure to do so will preclude the party use of those witnesses, unless such failure is harmless." *Muldrow v. Brooks*, 34 Fed. App'x 854, 855 (3d Cir. 2002) (citations omitted). A defendant is harmed when the witness's alleged knowledge is not revealed until after summary judgment, as the defendant did not have an opportunity to locate rebuttal evidence during discovery. *Id*. Under Rule 37, exclusion is the proper remedy. *Id*.; *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995).

Much like *Muldrow*, this Court has found prejudice here by Plaintiff's disclosure and discovery violations. *Ferguson*, 2012 WL 5839023, at *7. Owens-Illinois was refused any opportunity to develop rebuttal facts since Plaintiff never disclosed his witnesses with sufficient detail. *Id*. That prejudice is "palpable," *id*.,

and the discovery abuses are indistinguishable from this Court's orders in *Morgan v. 3M*, 2011 WL 7573811, at *1 n.1 (E.D. Pa. Dec. 22, 2011), *Maddux v. Owens-Corning*, 2012 WL 3536319, at *1 n.1 (E.D. Pa. July 26, 2012), and *Anderson v. AW Chesterton*, 2012 WL 2877405, at *1 n.1 (E.D. Pa. April 5, 2012).  Where, as here, "Plaintiff failed to disclose . . . , his evidence is excluded and will not be considered by the Court in deciding Defendant's motion" for summary judgment.  *Maddux*, 2012 WL 3536319, at *1.

Indeed, this Court entered summary judgment in *Anderson* against a CVLO plaintiff for the very same misconduct where "Plaintiff had at least three (3) separate opportunities and obligations to provide the [information] and failed to do so, and that the case is now ripe for disposition such that further delay would affect the administration of justice."  2012 WL 2877405, at *1 n.1.  In this case, Plaintiff also had three opportunities and obligations during discovery, yet he did not disclose any evidence or identify any witness against Owens-Illinois under Rule 26(a)(1), the Court-ordered standard interrogatories, or Owens-Illinois's product-specific discovery.  Therefore, as in *Muldrow*, *Morgan*, *Maddux*, and *Anderson*, Plaintiff is not allowed to use that information or witness to supply evidence against this motion for summary judgment.

### 3.    Owens-Illinois Cannot Be Held Liable for Alleged Kaylo Exposure After April 30, 1958.

Furthermore, Owens-Illinois did not make or sell Kaylo insulation after April 30, 1958.  On that date, Owens-Illinois left the insulation business altogether and sold the Kaylo business to Owens Corning Fiberglas, a separate company that

continued to make and sell Kaylo insulation into the early 1970s.  In the fifty-four years since the sale of the Kaylo division, Owens-Illinois has not manufactured any asbestos-containing thermal insulation product.  Accordingly, Owens-Illinois cannot be held liable for the alleged Kaylo exposure after April 30, 1958.  *Gillenwater v. Honeywell Int'l Inc.*, 2013 IL App (4th) 120929, at ¶¶ 119-23; *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 516 (Cal. Ct. App. 2004); *Kurak v. A.P. Green Refractories Co.*, 298 N.J. Super. 304, 322, 689 A.2d 757, 766 (N.J. App. Div. 1997).

In Illinois and nationwide, the issue has been litigated repeatedly with the same result.  The Illinois Appellate Court held that "impos[ing] liability on Owens-Illinois would violate a fundamental tenet of products-liability law: a manufacturer is responsible only for the defects in the products it manufactured."  *Gillenwater*, IL App (4th) 120929, at ¶ 121.  "Upon selling the Kaylo division to Owens-Corning, Owens-Illinois lost its power to stop the assembly line. To make Owens-Illinois liable for the Kaylo that Owens-Corning continued to churn out would make Owens-Illinois an insurer of Owens-Corning."  *Id.* at ¶ 122.

In *Cadlo*, the court also explained that "Owens-Illinois ended all association with Kaylo when it sold its Kaylo division in 1958," and therefore "Owens-Illinois had had no business association with, direct or indirect financial interest in, or control over Kaylo . . . by the time [plaintiff] was exposed to OCF's Kaylo."  125 Cal. App. 4th at 524.  Likewise in *Kurak*, the court concluded "there was not enough evidence to identify OI as a legally responsible source" because "[a]fter 1958, OI was no longer involved with Kaylo."  *Id.*  The trial court in *Kurak* therefore erred by

failing to direct a verdict for Owens-Illinois on any alleged exposure after April 30, 1958. *Id.* Just like *Gillenwater*, *Cadlo* and *Kurak*, Owens-Illinois cannot be held liable here for Mr. Centers' alleged exposure to Kaylo after April 30, 1958.

### 4. Plaintiff's Response to the Court-Ordered Requests Does Not Identify Exposure Evidence Against Owens-Illinois.

As discussed above, however, Plaintiff's response to the court-ordered requests does not identify any admissible evidence that Mr. Centers was ever exposed to any Owens-Illinois asbestos-containing product. There is no evidence anywhere in the record that Mr. Centers was exposed to Owens-Illinois Kaylo pipe covering at USI Chemical in Tuscola, Illinois between 1974 and 1975.

As in *Bowles*, concluding Mr. Centers took part in the removal of Owens-Illinois Kaylo pipe covering at USI Chemical, which could have been dozens of insulation products, "is too speculative of a leap to survive summary judgment." *Bowles*, 2013 IL App (4th) 121072, at ¶ 30. As both Mr. Downs and Mr. Kiser testified, every preformed insulation product at USI Chemical looked the same. Downs Dep. (Ex. E) at 34:24-43:3, 70:24-71:9; Kiser Dep. (Ex. F) at 29:15-32:1. Moreover, even if Owens-Illinois Kaylo was installed at USI Chemical and used in repair work at USI Chemical, it has not been shown where Kaylo was placed or whether in fact Owens-Illinois Kaylo was *frequently* used in *proximity* to where Mr. Centers *regularly* worked at USI Chemical. *Id.* at ¶¶ 31, 36.

There is no evidence that Mr. Centers ever purchased, handled, or was exposed to Owens-Illinois Kaylo. There is similarly no evidence that Mr. Centers was ever present while others used such a product. Plaintiff simply has not

sustained his burden to produce admissible evidence that exposure to Owens-Illinois Kaylo was so frequent, regular, and proximate exposure that it was a substantial factor in causing Mr. Centers' lung cancer.  Plaintiff's claim that Mr. Centers was exposed to Owens-Illinois Kaylo "is wholly speculative."  *Bowles*, 2013 IL App (4th) 121072, at ¶ 30.  *Id.*  Owens-Illinois is entitled to summary judgment.

## B.   Owens-Illinois Is Entitled to Summary Judgment Because No Expert Has a Specific Causation Opinion as to Owens-Illinois.

Plaintiff's tort claims require proof of causation.  *Nolan*, 233 Ill. 2d at 432-34; *Thacker*, 151 Ill. 2d at 362-63; *Johnson*, 284 Ill. App. 3d at 676-79.  None of Plaintiff's experts, however, has opined that Mr. Centers ever was exposed to asbestos from a product manufactured or sold Owens-Illinois, let alone exposure so frequent, regular, and proximate exposure that it was a substantial factor in causing Mr. Centers' lung cancer.  *See* Pl.'s Expert Reports at 1, ECF No. 114 (stating "Dr. Frank Ganzhorn (unable to file at this time, will file upon receipt)"); Stephen Kenoyer Rep., ECF No. 114-1 (citing no facts in the record that would support an opinion about Owens-Illinois).

"Under Illinois law, to serve as the sole basis for a conclusion that an act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed."  *Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997); *see also Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (summary judgment was appropriate without "expert evidence" in support of causation); *Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (plaintiff failed to show causation in the absence of

expert testimony because "the medical effects of second hand smoke [were] not within the ken of the ordinary person"); *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 611-12 (7th Cir. 1993) (summary judgment was appropriate in light of absence of expert testimony on causation for negligence action).   Here, without any expert testimony drawing the specific causation between Mr. Centers' alleged exposure to asbestos from any Owens-Illinois product and his lung cancer, Plaintiff's claims must fail as a matter of law.

Additionally, Illinois has "rejected the argument . . . that so long as there is *any* evidence that the injured worker was exposed to a defendant's asbestos-containing product, there is sufficient evidence of cause in fact to allow the issue of legal causation to go to the jury." *Nolan,* 233 Ill. 2d at 434 (emphasis original).  For "without the minimum of proof required to establish frequency, regularity and proximity of exposure, a reasonable inference of substantial causation in fact cannot be made."  *Id.* at 434.   Contrary to Illinois law, Plaintiff's experts have not established proof of frequent, regular, and proximate exposure to Owens-Illinois Kaylo such that it was a substantial factor in causing Mr. Centers' lung cancer.

Even if Plaintiff's experts tried to opine that Mr. Centers was so frequently, regularly, and proximately exposed to asbestos from an Owens-Illinois product (which they have not), the opinions would have been inadmissible under *Daubert* and Federal Rules of Evidence 702 and 703.  Opinions not based on any facts or data are unreliable from their very start and must be excluded.  *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3rd Cir. 2002) ("It is an abuse of

discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[i]f an expert opinion is based on speculation or conjecture, it may be stricken"); *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. Civ. A. 97-CV-0652, 1998 WL 175888, at *6 (E.D. Pa. April 15, 1998) ("An expert's testimony must have some connection to existing facts"); *see also In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999); Fed. R. Evid. 702(b) (expert testimony is admissible only if it "is based on sufficient facts or data").  There is no evidence of exposure to asbestos from any Owens-Illinois product anywhere in this case, and therefore any case-specific causation opinion against Owens-Illinois would be based on mere speculation and assumptions.

As a result, Owens-Illinois is entitled to summary judgment because no expert has offered any opinion—nor could they—that exposure to any Owens-Illinois product was a cause of Mr. Centers' lung cancer.

## V.   CONCLUSION

For these reasons, Owens-Illinois, Inc. respectfully requests an order granting summary judgment in its favor and against Plaintiff, granting it fees and costs, and awarding such further relief as this Court deems just and proper.

Dated:  December 3, 2013                    Respectfully submitted,

                                            By:/s/ Brian O. Watson
                                               Robert H. Riley
                                               Edward Casmere
                                               Brian O. Watson
                                               Schiff Hardin LLP
                                               233 S. Wacker Dr. Suite 6600
                                               Chicago, Illinois  60606
                                               (312) 258-5500
                                               (312) 258-5600 (facsimile)
                                               *Attorneys for Defendant*
                                               *Owens-Illinois, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 3, 2013, these papers were filed with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Brian O. Watson
Brian O. Watson

12997-3629
CH2\13883468.1