**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | Civil Action No.  MDL 875 |
| CENTERS v. A.W. CHESTERTON COMPANY et al | PA-ED No. 08-CV-90268 *Trans from IL-N Case No. 02-8702* |

**PLAINTIFF CENTERS'S RESPONSE IN OPPOSITION TO**
**OWENS-ILLINOIS INC.'S MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

Plaintiff Albert Centers ("Centers") responds to Defendant Owens-Illinois Inc.'s ("OI")

Motion for Summary Judgment and states as follows:

EVIDENCE

Albert Centers was an ironworker and member of the International Association of

Ironworkers Local 380. (Ex.2 at 20.) Centers worked as an Ironworker in Illinois during the

1960s and 1980s. (*See* Ex. 1 at ¶¶ 3, 4; Ex. 2 at 20, 23, 47; Ex. 6 at 2-3; Ex. 20.) Centers worked

at the USI Chemical Plant in Tuscola, Illinois ("USI") from 1974 to 1975. (Ex 1 at ¶¶ 3, 4; Ex. 2

at 20, 23.) In July 2000, Centers was diagnosed with non-small cell carcinoma of the lung. (Ex.

10 at 1.) Centers died on May 10, 2002 from lung cancer. (Ex. 19.) Dr. Frank Ganzhorn

determined Centers developed bilateral asbestos-related pleural disease from his occupational

exposure to asbestos. (Ex. 10 at 6.) Dr. Ganzhorn also determined, based on Centers's exposure

history, that Centers's cumulative asbestos exposure contributed to his lung cancer. *Id.*

I.      *Albert Centers's Work History*

      Kenneth Downs ("Downs"), who worked as an ironworker in the 1980s, states that he

regularly worked with Albert Centers from 1974 to 1975 at USI for a total of about 5-6 months.

(Ex 1 at ¶¶ 3, 4; Ex. 2 at 20, 23, 47.)

II.     *Owens-Illinois Inc.'s Kaylo Product Exposures*

      OI has admitted that "[i]t began the manufacture of commercial quantities of 'Kaylo'

asbestos-containing products in about 1948, and began the manufacture of commercial quantities

of 'Kaylo-20' in or after mid-1955, and continued such manufacture until about April 30, 1958."

(Ex. 3 at 14.) Invoices for Kaylo delivered to USI show that between January 28, 1953 and May

14, 1957 (i.e., during the period OI admitted it manufactured commercial quantities of Kaylo

pipe covering), OI sold at least 21,670 feet (over 4 *miles*) of Kaylo to USI.  (Ex. 4.)[1]  OI has also

admitted that "Kaylo and Kaylo-20 were premolded, light density rigid products, and were

manufactured in two forms, block and pipe covering . . . Kaylo was white or off-white in color . .

." (Ex. 3 at 14.)

      Howard Kiser ("Kiser"), a plumber, steamfitter, and welder, worked at USI "off and on"

from 1953 to 1982. (Ex. 5 at 6, 29-31.) He said he saw insulators applying Kaylo insulation

(including preformed pipe insulation and block insulation) "most of the time" on steam pipes at

USI from  1953-1970. (Ex. 5 at 35, 36, 47.) Mr. Kiser saw the name "Kaylo" on boxes of

preformed pipe insulation and block beginning in 1953 and continuing through 1970. *Id.*

      From 1974 to 1977, Downs worked with Albert Centers at USI for a total of 5 or 6

months. (Ex. 1 at ¶ 5; Ex. 2 at 20, 23.) During this time, Downs  routinely saw insulators

---

1Billing units are listed as "L.F." or linear feet on the invoices in this exhibit.

removing insulation from high pressure steam pipes connected to boilers and turbines several days a week. (Ex. 1 at ¶ 5; Ex. 2 at 27) The insulation Downs saw being removed at USI was mostly a pre-formed, half-round section that looked hard, chalky and off-white. (Ex. 1 at ¶ 5; Ex. 2 at 27.) Downs saw the insulators cutting the insulation with a handsaw, which generated lots of dust. (Ex. 1 at ¶ 5.) There was dust all over the tables and floors where the insulators were working. (Ex. 1 at ¶ 5.) This dust would blow all over the powerhouse and other buildings Centers and Downs worked in. (Ex. 1 at ¶ 5.) Centers and Downs regularly breathed in this dust. (Ex. 1 at ¶ 5.) Centers and Downs often worked within 50-100 feet of these insulators for several hours or more per day. (Ex. 1 at ¶ 5; Ex. 2 at 27.)

III.     *Asbestos Content of Owens-Illinois Inc.'s Kaylo Products*

OI has admitted that "its commercially produced asbestos-containing products [including Kaylo] were hydrous calcium silicates containing between 13% and approximately 20% asbestos." (Ex. 3 at 15.)

IV.     *Medical and Scientific/Proximate Causation Evidence*

Stephen Kenoyer, environmental scientist and industrial hygienist, reviewed Mr. Centers' exposure history. (Ex. 6 at 1-3; Ex. 7.) Based on this review, and based upon the available literature and his own qualifications and experience, Mr. Kenoyer determined Mr. Centers was exposed to significant airborne concentrations of asbestos while working as a bystander where asbestos-containing materials were being installed, removed, cut, or otherwise disturbed. (Ex. 6 at 3.)

Mr. Kenoyer cites numerous studies in his literature review regarding the occupational

3

exposures to asbestos dust concentrations associated with thermal pipe insulation. (Ex. 8 at 15-20.) In particular, the removal of half-round pipe insulation for high pressure steam pipes was found to create high concentrations of airborne asbestos fibers. (Ex. 8 at 15-17.) The literature review also cites several studies establishing that exposure to airborne fibers occurs to other people (bystanders) in the immediate vicinity and in some circumstances to people distant from workers installing, repairing, removing or otherwise disturbing asbestos-containing products. (Ex. 8 at 10-12.)

Dr. Frank Ganzhorn is board certified in internal medicine, pulmonary medicine, and critical care medicine. (Ex. 9 at 1.) Dr. Ganzhorn  reviewed Mr. Centers's work history, exposures to asbestos, and medical records. (Ex. 10 at 1-4.) Dr. Ganzhorn stated that Mr. Centers developed asbestos-induced pleural plaques, which are "localized fibrous lesions . . . that are one of the earliest and most common manifestations of asbestos exposure. Asbestos-induced pleural plaques are considered a 'marker' of clinically relevant asbestos exposure." (Ex. 10 at 4, 5.) Dr. Ganzhorn also concluded that Mr. Centers died of non-small cell cancer, and that: "Mr. Centers' asbestos exposure was a substantial contributing factor to the development of his non-small cell cancer of the lung and therefore to his death." (Ex. 10 at 6.)

<u>ARGUMENT</u>

I.    *Legal Standard For Summary Judgment*

"Summary judgment is a 'drastic remedy that prevents a claimant from presenting his cause of action to a jury of his peers. *Bushman v Halm,* 798 F.2d 651, 656 (3rd Cir. 1986). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for

summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson y Liberty Lobby. Inc.*, 477 U.S. 242, 247-248 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the ligation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

This court views the facts in the light most favorable to the non-moving party, who is the plaintiff herein. "All inferences must be viewed in the light most favorable to the nonmoving party, . . . [and] the court must construe facts and draws inferences in favor of the party against whom the motion under consideration is made" *J.S. ex rel. Snyder v Blue Mountain School Dist.* 650 F.3d 915, 925 (3d Cir. 2011). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there a genuine issue for trial." *Anderson,* 477 U.S. at 250.


II.      *Product Identification/Causation Under Illinois Law*

This court's rulings on defense motions for summary judgment in previous CVLO cases discuss Illinois law regarding proximate cause in asbestos cases. This discussion is repeated below and is taken from this court's rulings in *Goeken v ACandS,* MDL 875 case number 10-68122, docket number 197, issued April 4, 2012, and *Krik v BP America,* MDL 875 case number

5

11-63473, docket number 327, issued May 16, 2012.

"Ordinarily a jury must determine the issue of proximate cause." *Hollinger v Wagner Min. Equipment Co.,* 667 F.2d 402, 406 (3rd Cir. 1981). In order to establish· causation for an asbestos claim under Illinois law, a plaintiff must show that the defendant's asbestos was a "cause" of the illness. *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." *Id.* "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." *Zickhur v. Ericsson, Inc.,* 2011 IL App (1st) 103430 at ¶ 36, 962 N.E.2d 974, 983 (Ill. App. 1st Dist. 2011) (citing *Thacker*, 151 Ill.2d at 354).

Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. *Nolan v. Weil-McLain,* 233 Ill. 2d 416, 431 (Ill. 2009) (citing *Thacker*, 151 Ill. 2d at 354-55). Proof may be made by either direct or circumstantial evidence. *Thacker*, 151 Ill. 2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." *Thacker*, 151 Ill.2d at 354.

In applying the "substantial factor" test to cases based upon circumstantial evidence, Illinois courts utilize the "frequency, regularity, and proximity" test set out in cases decided by other courts, such as *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d. 1156 (4th Cir. 1986). *Thacker*, 151 Ill. 2d at 359. In order for a plaintiff relying on circumstantial evidence "to prevail on the causation issue, there must be some evidence that the defendant's asbestos was put to 'frequent' use in the [Plaintiff's workplace] in 'proximity' to where the [plaintiff] 'regularly' worked." *Id.* at 364. As part of the "proximity" prong, a plaintiff must be able to point to

"sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the [plaintiff]." This "proximity" prong can be established under Illinois law by evidence of "fiber drift," which need not be introduced by an expert. *Id.* at 363-66.

III.     *Proximate Causation*

As discussed in section II above, circumstantial evidence of causation can be used to survive summary judgment. *Thacker*, 151 Ill. 2d at 357. Evidence of Albert Centers' exposure to dust from pipe-covering removal is established through the eyewitness testimony of Downs. The invoices showing that over *4 miles* of OI's asbestos-containing Kaylo was sold to USI, where Mr. Centers worked in the 1970s are evidence of the extensive presence of OI Kaylo at USI. (*See* Ex. 4.) The testimony of Kiser, who installed mostly Kaylo at USI, is also evidence of OI's asbestos-containing products being installed extensively at USI.

In its motion OI focuses on Downs's inability to distinguish Kaylo from other pipe and block insulation during his deposition, but it ignores the remainder of the substantial evidentiary record in this case. The evidence set forth above meets the "frequency, regularity, and proximity" set forth in *Thacker*. Plaintiff has produced evidence establishing that: (1) over *4 miles* of OI Kaylo pipe and block insulation were delivered to USI during the 1950s; (2) in 1974 and 1975, off-white, chalky, preformed insulation matching the description of OI Kaylo was being removed from high pressure steam pipes several times a week inside the USI buildings where Centers and Downs worked together for 5-6 months; (3) Downs saw the insulators cutting this insulation with a handsaw, which generated lots of dust, and there was dust all over the tables and floors where the insulators were working; (4) according to plaintiff's expert Stephen Kenoyer and the expert literature he cites, this dust would include asbestos particles; (5) this dust would blow all over the

7

powerhouse and other buildings Centers and Downs worked in at USI; (6) Centers and Downs regularly breathed in this dust; and (7) for several hours per day, several days per week, Centers and Downs often worked within 50-100 feet of where the insulators were removing insulation matching the description of OI Kaylo. (Ex. 1 at ¶ 5; Ex. 2 at 27; Ex. 6 at 3; Ex 8 at 15-20.) Based on this evidence, a reasonable jury could conclude that Centers was exposed to asbestos fibers from Kaylo manufactured and/or sold by OI.

*Johnson v. Owens-Corning Fiberglass Corp*., 284 Ill.App.3d 669 (3d Dist. 1996), is instructive here. In *Johnson*, the victim worked at a wire mill at Keystone Steel & Wire Company ("Keystone"). In *Johnson*, Keystone purchased 200 pairs of asbestos gloves from Sager Glove Company. Evidence showed the gloves were used in departments of the mill where the victim worked. Two co-workers at Keystone testified that employees at the wire mill used gloves similar to those sold by Sager. However, no witness testified that the victim was observed wearing the gloves. The Appellate Court in *Johnson* reversed the grant of summary judgment and held:

> Although we do not think an inference can be drawn from the purchase order alone, when viewed in combination with the testimony of these employees, we think a triable issue of fact exists as to whether the gloves caused or contributed to [plaintiff's] cancer. A jury could reasonably infer that [plaintiff] came into contact with Sager's gloves on a regular basis. Therefore, the decision granting Sager's summary judgment is reversed.

*Johnson*, 284 Ill. App. 3d at 678. The evidence in this case shows the installation of large quantities (over *4 miles*) of OI Kaylo at USI in the 1950s, where Centers worked in the 1970s. The description of the pipe-insulation material being removed at USI from 1974 to 1975 in Centers's presence (preformed, chalky, off-white) matches the description of OI Kaylo. In a motion for summary judgment it is axiomatic that all reasonable inferences are made in favor of

8

the non-moving party. Based on this evidence a jury can reasonably conclude that Centers was exposed to OI Kaylo on a regular basis. Accordingly, summary judgment must be denied.

Further, Dr. Ganzhorn stated in his expert report that Centers developed asbestos-induced pleural plaques, which are "localized fibrous lesions . . . that are one of the earliest and most common manifestations of asbestos exposure. Asbestos-induced pleural plaques are considered a 'marker' of clinically relevant asbestos exposure." (Ex. 10 at 4, 5.) Dr. Ganzhorn also concluded that Centers died of non-small cell cancer, and that: "Mr. Centers' asbestos exposure was a substantial contributing factor to the development of his non-small cell cancer of the lung and therefore to his death." (Ex. 10 at 6.) Accordingly, a jury must decide whether Centers' exposure to OI's asbestos-containing products was a substantial contributing factor to his death.

IV.    *OI's Argument on Lack of Expert Testimony on Specific Causation is Untimely*

The portion of Defendant's summary judgment motion discussing expert opinions on specific causation should be stricken because it was not filed in the first round of dispositive motions. (*See* Def. Mot. Summ. J. at 22.) The new issue is untimely and has been waived.

Defendant's motion should be struck as untimely because it has been filed months after the deadline for dispositive motions in this case. The deadline for filing a dispositive motion was July 9, 2012.  Defendant failed to file a motion containing this issue by that date. Indeed, Defendant has waited until more than a year after the deadline to make this argument, and provided no explanation for its delay.

The failure to move for summary judgment on this issue by the dispositive motion deadline results in waiver. Although a new deadline for dispositive motions was created after the initial deadline, the second deadline was only created to address concerns about disclosure of

evidence in the motions already filed. The need to reopen discovery led to the second dispositive motion deadline. Extensive briefing and hearings took place and eventually led to the court order to reopen discovery and allow for dispositive motions after the close of the new discovery period.  Nothing in the record of those proceedings contemplated Defendant using the new deadline -  which was created solely to cure alleged defects in the evidence disclosed in the first round of dispositive motions - to avail themselves of a deadline to raise issues for dispositive motions.  To the contrary, the order entered to cure the defects expressly limited plaintiffs to evidence that was cited in the first round. If plaintiffs are so limited, defendants are also limited by what happened in the first round of dispositive motions.

Under Federal Rule of Civil Procedure 16(b)(4), in order for Defendant to file a motion for summary judgment after the deadline in the first round, Defendant would have needed to move the court for permission to do so and demonstrate good cause for why it did not file a motion for summary judgment by the deadline. No such request was made by Defendant and no finding of good cause has been made by this court to extend the original deadline. Without such a finding, this court is without power to extend original deadlines. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.") Here, the only finding of good cause related to reopening of discovery on the evidence in the motions on file in the first round. Thus, Defendant's newly raised dispositive issue has been waived and should be struck.

However, even if this court does not strike Defendant's motion for summary judgment on this newly raised issue, Defendant's argument should be rejected. Kenoyer's case-specific and general report both establish a connection between the removal of asbestos-containing thermal system insulation (such as Kaylo) and asbestos-related diseases including asbestosis and lung

10

cancer. (Ex. 7 at 4-5; Ex. 8 at 17-22.) As discussed in section III above, Ganzhorn also made a connection between Centers's asbestos exposure and his development non-small cell cancer of the lung. (Ex. 10 at 6.)

V.    *The Declaration and Deposition Testimony of Howard Kiser and Kenneth Downs are Admissible*

Defendant argues the declaration and deposition testimony of Howard Kiser and Kenneth Downs was not timely disclosed and must be stricken as a sanction, imposition of which is governed by Federal Rule of Civil Procedure 37. As discussed below, the disclosure complies with the court orders and federal rules. Therefore Rule 37 sanctions cannot be imposed. Alternatively, under the Third Circuit case law, any alleged failure to comply with discovery disclosure is not sufficient to warrant a Rule 37 sanction of striking the testimony from evidence.

A.    *Disclosure was timely*

During the first round of briefing on summary judgment motions for CVLO cases, defendants raised numerous motions to strike testimony of witnesses based on improper or untimely disclosure. To resolve these motions, the district court beginning on July 22, 2013,[2] issued a series of orders. These orders effectuated three things:

¬    Denied the pending motions to strike testimony cited in opposition to the summary judgments motions;[3]

¬    Directed plaintiffs to file a court designed template of a chart for disclosure of plaintiff,

---

2 Order of Judge Robreno entered July 23, 2013, in *Reed v. AC AND S et al.* Case 2:08 cv 88250-ER Doc. 128 (attached hereto as Exhibit 12.)
3 Order of Judge Robreno entered November 18, 2013, in *Id.* Case 2:08 cv 88250-ER Doc. 132 (attached hereto as Exhibit 13.)

11

coworker, and expert testimony;[4] and

¬   Reopened discovery as to the witnesses on the charts.[5]

Pursuant to the orders, plaintiff complied by filing the disclosure chart on October 1,

2013.  (Ex. 11.)  The chart listed Kenneth Downs and Howard Kiser as witnesses against OI for

Kaylo preformed pipe covering.

Discovery was reopened in the case for the purposes of taking fact witness depositions

until October 31, 2013. Defendant OI had the opportunity during this period to take the

depositions of Kiser and Downs. During this period the deposition of Kiser was taken on October

29, 2013 and the deposition of Downs was taken on October 15, 2013, and OI attended both by

counsel. (*See* Ex. 2; Ex. 16.) Plaintiff has fully and timely complied with this court-ordered

discovery, and defendant does not argue otherwise. Given the compliance with the court ordered

disclosure within the new scheduling order and the opportunity for discovery, Downs and Kiser

are timely disclosed witnesses. Rule 37 sanctions are not appropriate unless a violation of a

discovery order or Rule 26 has occurred. Neither has occurred. Fed. R. Civ. P. 37(b)-( c); *Meyers*

*v. Pennypack*, 559 F.2d at 904-05 (3d Cir. 1977); *ZF Merritor v. Eaton Corporation*, 696 F.3d

254, 288-89 (3d Cir. 2012).

Defendant's reliance on prior scheduling orders issued by the magistrate judge which

were modified and superseded by the district court's scheduling orders issued beginning on July

23, 2013 is misplaced. This Court exercised its discretion to amend the scheduling orders for

good cause as provided under Federal Rule of Civil Procedure 16(b)(4). In the original Rule to

Show Cause Order issued on July 23, 2013, this court stated, in relevant part:

---

4Chart order reopening discovery in *Jackson v. AC AND S et al.* 2:08 cv 90263-ER Doc. 185 entered
September 17, 2013 at pp. 1-2 (attached hereto as Exhibit 14.)
5*See id.* at 4-5, at Exhibit B to the Order.

The court finds that, given the procedural history of these cases, the substantive issues presented cannot be resolved on their merits based on the current records. For example, it is not always clear which discovery requests the discovery responses correspond to, whether those responses are timely and/or complete, or whether defendants have moved, (either in a timely fashion or otherwise) to compel responses or to object to responses served upon them. It is not clear in the responses styled as "supplemental" which responses are being supplemented.

The efficient administration of these cases, and the interests of justice, require that **a new scheduling order be issued in each case with deadlines for discovery requests and responses to be made**, and dispositive motions to be filed and responded to by the Plaintiff(s)."

(Ex. 12) (emphasis added). On September 4, 2013, the district court held a hearing on the Rule to Show Cause Order of July 23, 2013, and the district court implemented the order by denying the pending motions to strike witnesses without prejudice in an order entered on November 18, 2013.  (Ex. 13.)

OI has raised no challenge to the district court's entry of the Rule to Show Cause and implementing orders. Rather, Defendant's renewed motion to strike Kiser and Downs in the second round of summary judgment motions merely reiterates the same arguments asserted in the first round of summary judgment briefing. The arguments are based on the superseded scheduling orders and rulings of the magistrate court, ignoring the district court's orders setting new discovery deadlines. The district court was well within its power to issue a new scheduling order, and Defendant has raised no argument against the district court's power to do so.

The Rule to Show Cause and implementing orders denied the first motion to strike Kiser and Downs. Simultaneously, OI was granted the opportunity for discovery, curing any prejudice or surprise arising from earlier alleged improper disclosure of Kiser and Downs as  witnesses. Defendant offers no new reason, compared to what was asserted in the first round of summary judgment, to change the orders denying the motion to strike. Indeed, it is undeniable that

Defendant is in a better position now than when its original request for sanctions was denied.

To the extent the Court decides to again address the same arguments made in the first round of summary judgments, the arguments should be rejected. The rationale which led this court to issue the Rule to Show Cause is unchanged.

### B.   *Striking the witness is not a proper sanction*

The Court's orders on the first round of motions to strike deny the requested relief of striking the witness. The Court orders effectively impose a lesser sanction of continuing the case by requiring plaintiff to make a new disclosure and reopen discovery. The more severe sanction of striking the witness was not warranted before and nothing has changed to warrant such a sanction. Indeed, to the extent any basis for imposing sanctions existed before, such has been cured by continuing the case and allowing additional discovery.

Case law in the Third Circuit requires knowing concealment, i.e. intentional or willful non-compliance with court orders of the rules, before evidence can be stricken. In fact, the Third Circuit has held: "The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 576 (3d Cir.2002) (quoting *Meyers v Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir.1977)).

The case law sets forth multiple factors to be analyzed before imposing sanctions to exclude evidence. *Meyers*, 559 F.2d at 904-05 (3d Cir. 1977), followed in *ZF Merritor v. Eaton Corp.*, 696 F.3d 254, 288-89 (3d Cir. 2012). The Court of Appeals held in *ZF Meritor*:

[E]xclusion of critical evidence is an "extreme" sanction, and thus, a district court's

discretion is not unlimited. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *see also E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993) (explaining that a continuance, as opposed to exclusion, is the "preferred means" of dealing with a party's attempt to offer new evidence after the time for discovery has closed). . . .

In considering whether the District Court abused its discretion in denying Plaintiffs' request to submit alternate damages calculations, we will consider: (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence. *Pennypack*, 559 F.2d at 904-05. The importance of the evidence is often the most significant factor. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991); *Pennypack*, 559 F.2d at 904 (observing "how important [the excluded] testimony might have been and how critical [wa]s its absence").

696 F.3d at 288-89.

Analysis of the *Meyers/ZF Meritor* factors weighs in plaintiffs' favor in this case. First, as discussed above, there is no prejudice or surprise to OI. The witness was disclosed on the court ordered chart. As to the second factor, any prejudice from the allegedly inadequate earlier disclosures was cured by the renewed discovery period and OI was present at the depositions taken on October 15 and 31. As for the third factor, there is no disruption to the trial schedule which will only be determined after remand.

The fourth factor of bad faith or intentional misconduct is not present.[6] In fact, Defendant

---

[6] In establishing "bad faith" for not disclosing information, the standard is "knowing concealment." "Before any duty arises for party to disclose newly discovered facts which render prior answer incorrect, it must be shown that failure to disclose new facts would amount to *knowing concealment*." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975) (emphasis added). Similarly, "Rule 26(e) is designed to prevent party from surprising his adversary in setting forth new acts *at trial* not disclosed during discovery; before any duty to supplement responses arises, it must be shown that failure to disclose new facts will amount to knowing concealment." *PIC, Inc. v. Prescon Corp.*, 485 F.Supp. 1299 (D.C. Del. 1980) (emphasis added). The Third Circuit has imposed a similar "bad faith" standard: "Party's possible failure to provide names of two witnesses in its self-executing disclosures or to disclose them in response to interrogatories was not in bad faith and opponent knew names of witnesses and scope of their relevant knowledge well before trial." *Newman v. GHS Orthopedic*, 60 F.3d 153 (3d Cir. 1995). There is no showing of any bad faith by the plaintiffs or CVLO counsel.

has not even alleged any bad faith. Plaintiff's counsel complied with the court ordered chart and tendered both witnesses for further deposition. As to the allegations of bad faith during discovery in the first round of summary judgment motions, the Court has already ruled the conduct did not warrant a sanction of striking the witness. Plaintiff filed a response to the earlier motion(s) to strike which led to the Rule to Show Cause and succeeding orders.[7]

As to the final factor - the importance of the evidence - testimony cited in opposition to the motion for summary judgment is undeniably important to the case. Evidence, including declarations, can be used to defend summary judgment if the testimony can be admitted at trial

_____

7The response to the earlier motion to strike was filed in the instant case as Doc. 156.  The response incorporated multiple briefs on the issue of disclosure.  Below is a selection of briefs filed on this issue, including without limitation:

1) "Plaintiff's Response in Opposition to Defendants' Motions to Strike Based on Untimely Discovery Responses," filed on August 28, 2012, Document no. 191-4 in Ahnert,  2:10-cv-67443-ER

2) "Plaintiff's Response in Opposition to Certain Defendant's Motion to Bar Those Coworkers/siteworkers Included in Cascino Vaughan Law Offices' ('CVLO') 'Site Workers By Job Sites for IL & WI Job Sites' and 'Site Worker Past Testimony by Jobsite for IL & WI Job Sites,' Where Coworkers/siteworkers Have Not Been Otherwise Properly Disclosed Against Defendants for Cases Included in CVLO 3, and All Supplements to the Same," filed on November 6, 2012, Document no. 8767 in cases 2:01-md-00875-ER ; and

3) "Plaintiff's Motion to Reconsider and Clarify Order Entered December 4, 2012, re Striking Interrogatory Answers", filed on December 18, 2012, Document no. 131, in Bennington v. CBS Corp., et. al, Case no. 2:10-cv-61115-ER.

4) " Plaintiff's Motion and Memorandum to Reconsider Order Entered December 27, 2012, re Motion to Bar Persons in CVLO Master Lists," filed on January 11, 2013, Document 146 in Larweth v. A.C. and S. Et al., Case 2:08-cv-89914-ER.

5) "Plaintiff's Response to Defendant Owens-Illinois' Motion to Strike and for Sanctions," filed on January 7, 2013, Document 314 in Ahnert v. CBS Corp. et al., Case 2:10-cv-67443-ER.

6) "Plaintiff's Supplemental Authority Motion and Memorandum in support of their Motion to Reconsider Order Entered December 27, 2012, re Motion to Bar Persons in CVLO Master Lists," filed on January 18, 2013, Document 206-3 in Doyle v. A.C. and S. et al., Case 08-CV-89845-ER.

7) "Plaintiff's Consolidated Sur Reply to Motions to Strike Reply filed by Georgia-Pacific LLC" In Barlett Case 2:08-cv-89791-ER Document 128-2 Filed 02/15/13.

under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. 312, 324 (1986). The overriding concern of resolving cases on the merits, which *Meyers* and other Third Circuit precedent has recognized, is also applicable here. *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217-18 (3d Cir. 2003). Because Down's and Kiser's testimony represent key pieces of evidence concerning exposure in Plaintiff's case, the striking of testimony may well be dispositive of some part or all of the claims against OI.

The *Meyers/ZF Meritor* factors weigh in favor of Plaintiff. OI has not supported a Rule 37 sanction of striking witnesses by providing the requisite evidence.

<u>CONCLUSION</u>

For the foregoing reasons, the court should deny the motion for summary judgment filed by Defendant Owens-Illinois.

Dated: January 2, 2014

<u>/s/ Robert G. McCoy</u>
Attorney for Plaintiff

Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Avenue
Chicago, Illinois 60607
(312) 944-0600
(312) 944-1870 (fax)

**Certificate of Service**

I hereby certify that on January 2, 2014, I caused the forgoing to be electronically filed with the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system which will automatically send all necessary notifications of this filing to CM/ECF participants in this case.

/S/ Robert G. McCoy
Attorneys for Plaintiffs

Allen D. Vaughan
Michael P. Cascino
Robert G. McCoy
Cascino Vaughan Law Offices
220 S. Ashland Ave.
Chicago, IL 60607
(312) 944-0600